## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JANA NOEL BRISBOIS,

     Plaintiff,

     vs.                                 Civ. No. 24-62 JB/KK

LEE DUDEK, Acting Commissioner
of the Social Security Administration,

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

     THIS MATTER is before the Court on Plaintiff Jana Noel Brisbois' ("Claimant") Motion to Award Immediate Payment of Benefits or Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 18), filed on June 14, 2024, and Defendant Commissioner of Social Security's ("Commissioner") Opposed Motion to Remand for Further Administrative Proceedings Pursuant to Sentence Four of 42 U.S.C. § 405(g) (Doc. 23), filed on September 5, 2024. The parties are in agreement that the Administrative Law Judge's decision in this case—finding that Claimant was not disabled during the relevant time period (August 6, 2015, to January 9, 2020)—should be reversed and remanded. (*See* Docs. 18, 23.) However, they disagree about the form of relief that the Court should award: Claimant seeks an immediate award of benefits, whereas the Commissioner argues that further administrative proceedings are warranted. (*Compare* Docs. 18 and 24, *with* Docs. 23 and 25.)

     Having considered the parties' arguments and after meticulously reviewing the record, I find that the decision of the Administrative Law Judge (ALJ) is not supported by substantial

---

[1] By an Order of Reference (Doc. 10) entered on January 22, 2024, United States District Judge James O. Browning referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

evidence and, therefore, that remand is appropriate. I also find that on the record in this case, which has been pending for over nine years and involves a closed period of time as to which the evidence has been fully developed, an immediate award of benefits is appropriate. I, therefore, recommend that Claimant's Motion to Award Immediate Payment of Benefits or Reverse and Remand for Rehearing with Supporting Memorandum (Doc. 18) be GRANTED insofar as it seeks remand for an immediate award of benefits, and the Commissioner's Motion (Doc. 23) be GRANTED IN PART and that this case be remanded for an immediate award of benefits.

## I.    <u>Background and Procedural History</u>

Claimant was born in 1976 and earned her GED in 1993. (AR 433, 438.) She has been "exposed to a lot of violence" her "whole life," including being molested when she was 13 years old and raped and beaten "most of [her] adult life" by both strangers and men with whom she has been in a relationship. (AR 106-7, 117-18, 127-28, 155, 456, 1821, 1822.) As a result, she doesn't trust men and is "scared to even walk by any men at all." (AR 118.) She first experienced depressive symptoms at the age of 8, which she describes as "constant since they began at that point." (AR 1206.) She has been diagnosed with bipolar disorder, social anxiety disorder, generalized anxiety disorder, chronic post-traumatic stress disorder ("PTSD"), major depressive disorder, and personality disorder, as well as a number of physical impairments. (*See* AR 156, 694-95, 1206, 1814, 2278[2].) She attempted suicide by intentional overdose at age 13 but has no history of subsequent suicide attempts. (AR 1207.) She has been under the care of numerous mental health providers and treated with a variety of prescription medications, including clonazepam, Lamictal,

---

[2] The ALJ found that Claimant suffers from the following severe impairments: "anxiety, depression, discoid lupus, vasculitis, fibromyalgia, bipolar disorder, chronic post-traumatic stress disorder (PTSD), obesity, bilateral knee osteoarthritis, scoliosis, and personality disorder." (AR 2278.)

Ambien, Saphris, mirtazpine, Prozac, amitriptyline, and prazosin. (*See* AR 865, 868, 1131, 1166, 1814.) Even with treatment and medication, Claimant has experienced worsening of her symptoms and reported, at one point, that therapy made things worse because she "had to relive everything every week." (AR 113-14, 867, 1857.)

Claimant has never held a full-time job. (AR 105.) Between 1992 and 2008, she had occasional employment as a laborer, cashier, or busser. (AR 438.) During that time, Claimant's yearly earnings ranged from $0.00 (in 1996, 2003, 2005, and 2007) to a maximum of $2,091.80 (in 1997). (AR 408.) Her total earnings between 1992 and 2008 were $10,351.31. (AR 401.) She stopped working completely in 2008 because her conditions caused her to "miss work often[.]"[3] (AR 437.) In 2010, she attempted to work at McDonalds but "lasted maybe a week." (AR 127.) In the summer of 2017, she applied to work for a landscaping company; at the time, she was thinking about getting bariatric surgery and thought the job—which would have required her to walk five miles a day, handing out flyers in neighborhoods—would be a good way to show effort towards losing weight so she would be eligible for the surgery. (*See* AR 115-17.) She quit after four days because she "couldn't walk" due to pain in her knees and feet and because she felt paranoid and was fearful of passing cars and the possibility of somebody saying something to her.[4] (AR 2344-45.) She has attended college "on and off" and completed "[s]ome college" but has never earned a degree.[5] (AR 105.) She attributes her inability to be a full-time student and to complete college (via online learning only) to memory and concentration problems. (*See* AR 114, 129-30.)

---

[3] The record additionally indicates that Claimant was incarcerated for a two-and-a-half-year period from approximately 2007-2009. (*See* AR 155.)

[4] Claimant testified that she was supposed to pass out 500 flyers a day, but she only managed to pass out 20 flyers total during the four days. (AR 2344-45.)

[5] At her hearing in January 2023, Claimant testified that she has been trying for 20 years to become a dental hygienist but has been unable to successfully do so for multiple reasons, including

On July 6, 2009, Claimant first applied for Supplemental Security Income ("SSI"), alleging she became disabled on June 1, 2002. (AR 152.) On May 9, 2011, a fully favorable decision on Claimant's 2009 application concluded that Claimant suffered from the severe impairments of depression and PTSD, each of which the ALJ found met the applicable criteria in the listing of impairments contained in the social security regulations, 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing 12.04 (depression), and Listing 12.06 (PTSD)), thus supporting a determination of disability. (AR 154-57.) Claimant was found to have been under a disability since July 6, 2009, the date of her application. (AR 157.) However, shortly after the issuance of the decision finding Claimant disabled, she was incarcerated on drug and shoplifting charges. (*See* AR 107, 109.) Claimant was using drugs to "cop[e] with [her] life" and was shoplifting so that she could secure drugs. (AR 107, 2282.) Her SSI benefits were terminated due to her incarceration.[6] (*See* AR 164.)

Claimant was released on parole on July 31, 2015. (AR 411.) On August 6, 2015, she reapplied for SSI, alleging a disability onset date of July 6, 2009—i.e., the date she was previously found to be disabled—due to PTSD, anxiety, depression, and being emotionally and mentally unable to obtain employment. (*See* AR 159, 160, 223, 395, 433, 437.) Her application was denied initially in February 2016 (AR 153-172, 223-26) and at reconsideration in November 2016 (AR 173-191, 230-34). Following a hearing in January 2018, ALJ Stephen Gontis issued an unfavorable decision, finding Claimant not disabled. (AR 98-146, 192-208.) The Appeals Council remanded

---

concentration problems, inability to take an in-person test, and depression that led her to "just give up." (AR 2343.)

[6] *See* 20 C.F.R. § 416.1335 (providing that SSI benefits will be terminated "following 12 consecutive months of benefit suspension for any reason"); *see also* 20 C.F.R. § 416.1325(a) (providing that a recipient of SSI is ineligible for benefits while a resident of a public institution).

the case for rehearing (AR 214-16), and two additional hearings were held before ALJ Gontis in February and October 2020. (AR 42-55, 56-97.)

In November 2020, ALJ Gontis issued a partially favorable decision, finding that Claimant was disabled as of, but not prior to, January 10, 2020. (*See* AR 2363-81.) In relevant part, ALJ Gontis found that prior to January 10, 2020, Claimant retained the residual functional capacity ("RFC") to perform sedentary work with certain limitations, but that beginning on January 10, 2020, Claimant would "be off-task 20% of the time in an eight-hour workday in addition to normal breaks." (*See* AR 2372, 2377.) This additional limitation in Claimant's RFC—being off-task 20% of the time—resulted in ALJ Gontis finding Claimant disabled as of January 10, 2020. (AR 2380.)

Claimant appealed ALJ Gontis' decision to the Appeals Council, which denied her request for review. (AR 2382-86.) She then appealed to this Court, alleging, among other things, that with regard to the period prior to January 10, 2020, ALJ Gontis erred by improperly weighing the opinions of her treating psychiatric provider, Jimmy Calzado, PMHNP, and consultative psychiatrist Paula Hughson, M.D., both of whom opined that Claimant has "marked" limitations in numerous areas of function that would preclude all work.[7] The Commissioner, agreeing that remand for further proceedings was warranted, moved this Court for an order remanding the case for further administrative proceedings. (AR 2393-94.) The Honorable Karen B. Molzen, having "reviewed the record in light of the issues [Claimant] raised[,]" found that "the ALJ's decision is not supported by substantial evidence and that the ALJ did not apply the correct legal standards in determining that Plaintiff is not disabled." (AR 2395-96.) She, therefore, reversed the Commissioner's decision and remanded for reconsideration of Claimant's claim. (AR 2395-96.)

---

[7] *See Brisbois v. Kijakazi*, Civ. No. 21-511 KBM, Doc. 22 (D.N.M. Feb. 4, 2022).

On remand, the Appeals Council affirmed the finding that Claimant has been disabled since January 10, 2020, and vacated the prior decision "only with regard to the period prior to January 10, 2020[.]" (AR 2400.) The Appeals Council noted deficiencies with respect to ALJ Gontis' explanation of Claimant's RFC prior to January 10, 2020, including, specifically, whether and, if so, how he considered evidence regarding Claimant's need for home health care assistance[8] in assessing Claimant's RFC. (AR 2400-01.) The Appeals Council remanded the case to a new ALJ for further proceedings and issuance of "a new decision for the period prior to January 10, 2020." (AR 2402.) The Appeals Council specifically directed the new ALJ to, *inter alia*, "[f]urther consider the claimant's need for home health care assistance and how it could impact the claimant's . . . ability to perform work on a regular and continuing basis" and "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations[.]" (AR 2401.)

A hearing before the newly assigned ALJ, Jennifer Fellabaum, was held on January 26, 2023. (AR 2315-2362.) On September 27, 2023, ALJ Fellabaum issued an unfavorable decision, finding that Claimant was not disabled prior to January 10, 2020. (AR 2272-2296.) Claimant appeals that decision to this Court. (*See* Doc. 1.)

## II.    **The Parties' Arguments**

Claimant argues that ALJ Fellabaum's finding that Claimant was capable of performing work that exists in the national economy between August 6, 2015, and January 9, 2020, is not supported by substantial evidence and that ALJ Fellabaum, like ALJ Gontis, failed to apply the

---

[8] As will be discussed more fully below, the record establishes that Claimant' mother, with whom Claimant lives, began providing caregiving assistance (e.g., help with cooking, caring for pets, providing transportation/accompanying Claimant to appointments) to Claimant no later than October 2015. In December 2018, Claimant' mother began receiving compensation through a home healthcare agency for the caregiving services she was providing.

correct legal standards in weighing the opinions of PMHNP Calzado and consultative psychiatrist Paula Hughson, M.D. (*See* Doc. 18 at 8-20, 24-27.) She additionally argues that ALJ Fellabaum erred by failing to follow the Appeals Council's remand instructions, and further erred by excluding Claimant's use of an assistive device in assessing Claimant's RFC. (*See* Doc. 18 at 6-8, 20-24.) In support of her position that the Court should remand for an immediate award of benefits rather than additional proceedings, Claimant argues that "the protracted nature of this case"—i.e., the fact that her case has been pending for over nine years, during which time there have been three administrative hearings and two supplemental hearings held, three ALJ decisions issued, and two remands granted (one by the Appeals Council, and one by this Court)—supports an award of benefits. (*See* Doc. 18 at 25-26.) She additionally argues that because the administrative record in this case is "complete" and contains "an opinion from a treating provider, PMHNP Calzado, who assessed disabling limitations[,]" remand for rehearing to allow for further fact-finding is unnecessary and will serve no useful purpose. (Doc. 18 at 26-27.)

In lieu of a response to Claimant's motion, the Commissioner filed his own motion to remand. (*See* Doc. 23.) The Commissioner concedes that remand is proper but argues that remand for additional proceedings, rather than an immediate award of benefits, is the appropriate remedy. (*See* Doc. 23 at 5.) Contending that "the appropriate focus for this Court should be on whether uncontradicted evidence establishes that [Claimant] was disabled during the period at issue[,]" the Commissioner argues that resolution of "conflicting evidence" and "conflicting opinions" regarding how Claimant's impairments affected her work-related abilities between August 2015 and January 2020 requires remand to allow an ALJ to resolve those conflicts "in the first instance." (Doc. 23 at 5-7.)

### III.    **Applicable Law**

### A.  Standard of Review

Courts have the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) ("sentence four"). Remand under sentence four of 42 U.S.C. § 405(g) is only proper if the Commissioner's decision is not supported by substantial evidence or fails to correctly apply the law. *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (explaining that the Commissioner's decision "must be affirmed if it is supported by substantial evidence and correct legal standards were used"). A federal court's review of the Commissioner's final decision is, thus, limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, a court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). A federal court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

### B.  Choice of Remedy: Additional Proceedings, or Immediate Award of Benefits

In cases where remand under sentence four is granted, "it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993); *see Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) ("Whether or not to award benefits is a matter of our discretion."). In deciding whether to reverse for an immediate award of benefits, courts should consider both "the length of time the matter has been pending" and whether "remand for additional fact-finding would serve any useful purpose[.]" *Id.* (brackets, quotation marks, and citations omitted). The Commissioner "is not entitled to adjudicate a case *ad infinitum* until [he] correctly applies the proper legal standard and gathers evidence to support [his] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (quotation marks omitted).

IV.    <u>Analysis</u>

A.  **The length of time this case has been pending weighs in favor of an immediate award of benefits.**

The first factor the Court considers is the length of time this case has been pending. *Salazar*, 468 F.3d at 626. Claimant reapplied for SSI on August 6, 2015, meaning this case has been pending for over nine years. During that time, there have been three hearings, two supplemental hearings, and three different ALJ decisions issued, including a partially favorable decision finding Claimant disabled as of January 10, 2020. During the prior appeal to this Court, the Commissioner agreed that remand was warranted, a tacit concession that the decision at issue was not supported by substantial evidence and/or that the ALJ committed legal error in concluding that Claimant was not disabled prior to January 10, 2020. (*See* AR 2393-94.) This Court, indeed, found that ALJ Gontis' decision was not supported by substantial evidence and did not apply the correct legal

standards in determining that Claimant was not disabled prior to January 10, 2020, and, therefore, remanded the matter. (*See* AR 2395-96.)

Now, on a second appeal to this Court, the Commissioner again agrees that remand is warranted, conceding for a second time that the ALJ's determination is not supported by substantial evidence and/or that incorrect legal standards were applied. A second remand for further proceedings will further delay final resolution of this case, possibly for years to come. Under the facts of this case, I find that the procedural history of this matter weighs in favor of an immediate award of benefits. *See, e.g., Donna F.P. v. O'Malley*, Case No. 1:23-cv-00422-JB-LF, 2024 WL 3725633 (D.N.M. July 15, 2024) (remanding for an immediate award of benefits in a case that had been pending for nearly nine years and where the Commissioner had twice requested remand under sentence four); *Maldonado v. Kijakazi*, No. 1:22-cv-0554 DLM, 2023 WL 4235637 (D.N.M. June 28, 2023) (remanding for an immediate award of benefits in a case that had been pending for more than seven years and where the Commissioner was requesting a third remand for further administrative proceedings); *Samadi v. Kijakazi*, Civ. No. 21-314 JFR, 2022 WL 2286832 (D.N.M. June 24, 2022) (remanding for an immediate award of benefits in a case that had been pending for 15 years and where the Commissioner was requesting a third remand); *Mendoza-Martinez v. Kijakazi*, No. 20-cv-0310 SMV, 2021 WL 5207074 (D.N.M. Nov. 9, 2021) (remanding for an immediate award of benefits in a case that had been pending for nearly 12 years and where the Commissioner was requesting a second remand for further administrative proceedings).[9] That, however, does not end the analysis.

---

[9] I note that a history of prior remands—voluntary or not—is not a prerequisite to an immediate award of benefits. On numerous occasions, the Tenth Circuit has remanded for an immediate award of benefits even where the case was on appeal for the first time. *See, e.g., Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006); *Ragland v. Shalala*, 992 F.2d 1056 (10th Cir. 1993); *Harris v. Sec'y of*

### B.  Whether additional fact-finding would serve any useful purpose.

The Court must next consider whether remanding for additional fact-finding would serve any useful purpose or would merely delay the receipt of benefits. *Salazar*, 468 F.3d at 626. This case involves a closed period—August 6, 2015, to January 9, 2020—as to which the record, which contains voluminous medical evidence as well as numerous medical opinions, has been fully developed. The Commissioner does not argue that remand is required because further development of the record is needed, only that this case should be remanded because the record contains "conflicting evidence" and "conflicting opinions" that require resolution by an ALJ. After meticulous review of the record and careful consideration of the Commissioner's arguments, I conclude that remanding for additional fact-finding would serve no useful purpose and would merely delay the receipt of benefits.

### 1.  "Conflicting Evidence"

The Commissioner argues that there is "conflicting evidence" in the record regarding Claimant's "alleged need for home healthcare and [her] work-related abilities between August 2015 and January 2020, which an ALJ should assess in the first instance." (Doc. 23 at 5.) According to the Commissioner, Claimant claimed that her mother had been her caretaker since 2014 or 2015, but evidence in the record indicates that home healthcare services were not provided "until much later," i.e., until December 2018. (Doc. 23 at 5-6.) The Commissioner argues that remand is required to allow an ALJ to make specific factual findings that resolve the "conflicting evidence" regarding Claimant's receipt of home healthcare services, including evidence regarding her activities of daily living and attempt to work in 2017. (Doc. 23 at 5-7.)

---

*Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987); *Talbot v. Heckler*, 814 F.2d 1456 (10th Cir. 1987).

Claimant points out that "the 'conflicting evidence' the Commissioner cites to has remained the same for the past two hearings and was evaluated by the ALJ," and she disputes the Commissioner's contention that the evidence regarding the need for and nature of the caretaking assistance Claimant received from her mother is "conflicting." (Doc. 24 at 5-6, 8.) She argues that the record contains uncontroverted evidence documenting the support and caregiving that Claimant's mother provided dating back to 2015, including the formal care plans that were developed when Claimant's mother became her paid caregiver through Heritage Home Healthcare & Hospice in December 2018. (*See* Doc. 24 at 6.) Regarding the Commissioner's argument that other evidence—e.g., that Claimant took a job handing out flyers in 2017—indicates a conflict in the evidence regarding Claimant's need for home healthcare, Claimant points out that ALJ Fellabaum did not rely on the evidence cited by the Commissioner to support her decision, rendering the Commissioner's argument *post hoc* rationalization that should be disregarded. (Doc. 24 at 6-7.)

I agree with Claimant that remand for additional factfinding regarding the evidence of Claimant's receipt of home healthcare services will not serve any useful purpose, primarily because, as Claimant argues and contrary to the Commissioner's characterization of the record, there is nothing "conflicting" about that evidence. I also agree with Claimant that the Commissioner's arguments regarding evidence of Claimant's activities of daily living and attempt to work in 2017 are *post hoc* rationalizations and that remand for further consideration of that evidence is not required.

Regarding the evidence of Claimant's receipt of home healthcare support from her mother, the uncontroverted evidence establishes that, although Claimant's mother was not paid for providing caregiving services until 2018, she has provided support and caregiving services to

Claimant since at least 2015. (*See* AR 458-59, 462, 2283.) In her October 2015 Function Report, Claimant reported that her mother, with whom she lives, was helping her at that time with things like feeding her dogs and cooking meals. (AR 458-59, 462.) Her mother was also accompanying her on the limited occasions she would leave the house, e.g., for doctor's appointments, because she suffers from anxiety and panic attacks and feels safer when her mother is with her. (AR 461, 462, 464.) In her July 2016 Function Report, Claimant reported worsening of her conditions and the overall state of her mental and physical health. (AR 480.) In addition to her mental impairments, she reported experiencing "physical problems that prevent [her] from moving around without pain" and that her mother "helps [her] out more than [she] like[s] to admit" and that she feels like she has "become a burden to her[.]" (AR 485.) Regarding her personal care, Claimant indicated that her mother was having to remind her to do things like take showers, change her clothes, and eat. (AR 481-82.) She also reported difficulty using the toilet due to "pain in [her] body when getting up, or down from the toilet[.]" (AR 481.) Whereas she was preparing meals around three-to-four times a week in October 2015 (AR 451, 460), by July 2016, she was only preparing one or two meals a week, typically pre-made food or food that can "sit for a period of time[.]" (AR 482.) Her mother was doing "all the grocery shopping" at that time because Claimant had a "fear of going into a store and encountering a stressful situation." (AR 483.)

In December 2018, Claimant's mother became her paid caretaker through Heritage Home Healthcare & Hospice. (*See* AR 60, 1520.) She continued providing the same support services that she first began providing in 2015-2016, i.e., assistance with hygiene/grooming/bathing, bowel and bladder services, meal preparation, eating, household services (e.g., housekeeping, laundry, running errands, picking up medications), and transportation. (AR 1520.) Claimant's original caregiver plan called for her to receive 20 hours of care per week. (AR 1520.) In December 2019,

13

Claimant's care plan was increased to 23 hours of assistance per week. (AR 1518.) Effective February 19, 2020, Claimant's care plan was increased to 30 hours of home healthcare assistance per week.[10] (AR 2270.)

Notably, in her decision ALJ Fellabaum acknowledged Claimant's testimony that her mother had been her caregiver "since 2014-2015" and noted that Claimant's Function Reports indicated that she "cannot go out alone" and "needs reminders to eat . . . and do her personal care." (AR 2283.) She additionally noted Claimant's reports that the only time she leaves the house is for appointments, that she "is scared of people[,]" and that "her mother helps her a lot." (AR 2293.) ALJ Fellabaum also noted that Claimant started receiving services through Heritage Home Healthcare & Hospice in December 2018 and that her care plan increased from 20 hours to 23 hours of service per week in December 2019, and from 23 hours to 30 hours of service per week in February 2020. (AR 2284.) Not only did ALJ Fellabaum not find any conflict in the evidence regarding Claimant's receipt of home healthcare services, but, rather, she appears to have fully credited Claimant's testimony—which is consistent with her 2015 and 2016 Function Reports— that her mother began providing caregiving services (albeit unpaid) in 2015.

Regarding the Commissioner's argument that evidence of Claimant's activities of daily living and her attempt to work in 2017 somehow support remanding for further fact-finding, I find that argument unpersuasive for two reasons. First, as Claimant points out, ALJ Fellabaum did not

---

[10] The majority of the additional time was approved for additional "Bowel & Bladder Services" (increased from 20 to 45 minutes per day (i.e., +25 minutes)) and "Household Services/Support Services" (increased from 295 minutes per week to 390 minutes per week). Claimant was not sure whether there a "specific event" that happened around that time that her doctor used to justify the increase in time; however, she testified that it had gotten to the point that she could "barely walk" and that "even getting from [her] bed to the bathroom is hard sometimes[,]" resulting in her having "accidents" because she "couldn't get to the bathroom on time[.]" (AR 2339.) The increase in time of service was one of the primary reasons cited by ALJ Gontis in support of his finding that Claimant was disabled as of January 10, 2020. (*See* AR 2378.)

cite the evidence relied on by the Commissioner as a basis for her decision or indicate that she discounted Claimant's claims about her need for assistance from her mother based on inconsistency with other evidence in the record. And second, the Commissioner's reliance on evidence of Claimant's limited activities of daily living and attempt to work in 2017 to argue that "conflicting evidence" exists that requires remand for further fact-finding ignores that "sporadic performance [of household tasks] does not establish that a person is capable of engaging in substantial gainful activity." *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (citing *Broadbent v. Harris*, 682 F.2d 407, 413 (10th Cir. 1983)).

Even accepting that Claimant was able to engage in some activities of daily living during the relevant period, which Claimant does not dispute, that does not mean there is a "conflict" in the evidence regarding Claimant's need for assistance from her mother and what that evidence reveals about whether or not Claimant was capable of engaging in substantial gainful activity on a regular and continuing basis. In their respective October 2015 Function Reports, both Claimant and her mother reported that Claimant's primary functional limitations and need for assistance related to her mental impairments, i.e., her inability to leave their home unaccompanied due to extreme anxiety and fear of strangers, particularly men. (*See* AR 450-56, 459-64.) Although Claimant was able to take care of housework (indoor only), personal care, and cooking to some degree, she engaged in those activities no more than 2-3 times a week and only for, at most, a couple of hours. (*See* AR 460.) Moreover, it is uncontroverted that Claimant could not do yardwork "because of fear of strangers" and "anxiety when she's outside the house"; that the only shopping she did was via the computer; and that she could not leave the house without her mother. (AR 451-52, 460-61.)

Regarding Claimant's attempt to work in 2017, ALJ Fellabaum mentioned that evidence in her finding that Claimant "worked for three or four days passing out flyers for a landscape company – there were problems with her knees and feet, and she had some paranoia. This is not [substantial gainful activity]." (AR 2278.) ALJ Fellabaum, however, gave no further consideration to that evidence and did not rely on it in assessing Claimant's RFC. This in unsurprising given what the record demonstrates about Claimant's attempt to work in 2017, i.e., that she took the job because she was trying to show effort towards losing weight so she would be eligible for bariatric surgery; that she quit after four days because she "couldn't walk" due to pain in her knees and feet and because she felt paranoid and was fearful of passing cars and the possibility of somebody saying something to her; and that she only managed to complete about 1% of the task in her four days of working. (AR 115-17, 2344-45.) The Commissioner's argument that evidence of Claimant's attempt to work in 2017 "is not what one would expect for someone who was allegedly homebound and unable to handle her own self-care" not only is impermissible *post hoc* rationalization but also, on the specific facts, fails to demonstrate an inconsistency or conflict in the evidence requiring remand for further fact-finding. (Doc.23 at 6.) Indeed, the fact that Claimant quit after just four days due to paranoia and fear of being in public tends to reinforce, not undermine, her claims regarding difficulty leaving the house, claims that find consistent support across record and that ALJ Fellabaum credited. (*See* AR 451, 454, 461, 464, 1208, 2280.)

In sum, I fail to see—and the Commissioner has failed to identify—any actual conflicts in the evidence regarding Claimant's need for home healthcare assistance that would require remand for additional fact-finding. The record contains uncontroverted evidence, cited by ALJ Fellabaum, that Claimant's mother has been her caregiver and provided her with assistance since at least 2015. While true, as Claimant argues and the Commissioner appears to concede, that ALJ Fellabaum

failed to connect the evidence regarding Claimant's need for assistance to her RFC assessment as she was expressly directed by the Appeals Council to do, I do not recommend an immediate award of benefits based on this failure. Instead, as explained in the next section, my recommended disposition of this case turns on the fact that ALJ Fellabaum assessed Claimant with a mental functional limitation that the vocational expert testified forecloses employment and the record thus establishes that Claimant was under a disability as defined in the Social Security Act from August 6, 2015 through January 9, 2020.

### 2. "Conflicting Opinions"

The Commissioner argues that the record "contains conflicting opinions about [Claimant's] mental abilities between August 2015 and January 2020" and that the Court should, therefore, "remand this case for further proceedings and leave the making of specific factual findings" regarding the resolution of conflicting opinions to the ALJ. (Doc. 23 at 7.) Although the Commissioner is correct, at a high level, that the record contains conflicting opinions regarding Claimant's mental functional limitations, I disagree that remand for further proceedings is required to resolve the conflicts. That is because, as I explain more fully below, (1) with respect to a particular area of mental functioning—social interaction—there is no unresolved conflict, (2) ALJ Fellabaum found that Claimant is markedly limited in her ability to interact with others, and (3) the vocational expert ("VE") who testified at Claimant's hearing opined that employment would be foreclosed for someone with Claimant's social interaction limitations (i.e., inappropriate interactions with coworkers and supervisors, and the inability to interact with men).

Proper evaluation of mental impairments and any attendant non-exertional functional limitations is a critical part of the sequential evaluation process, particularly in assessing a person's RFC. *See* SSR 85-15, 1985 WL 56857, *4 (Jan. 1, 1985) (explaining that even where a claimant's

mental impairments do not meet or medically equal a Listing, the "process must go on to consider whether the individual can meet the mental demands of past relevant work" and that "[t]his decision requires careful consideration of the assessment of RFC"). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; *to respond appropriately to supervision, coworkers, and usual work situations*; and to deal with changes in a routine work setting." *Id.* (emphasis added). "A substantial loss of ability to meet *any* of these basic work-related activities would severely limit the potential occupational base." *Id.* (emphasis added). "This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." *Id.*; *see Mendoza-Martinez*, No. 20-cv-0310 SMV, 2021 WL 5207074, at *1, 9 (reversing and remanding for an immediate award of benefits where the record contained opinions from two doctors that the claimant was markedly limited in her ability to be supervised—opinions that the Commissioner repeatedly rejected without adequate explanation—and where a VE testified that if the claimant were markedly limited in her ability to be supervised, she would not be able to work).

Here, at step three of the sequential evaluation process, in determining whether any of Claimant's impairments met or medically equaled the severity of a listed impairment, ALJ Fellabaum found that "during the relevant period[,]" Claimant had "a marked limitation"—i.e., "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis"—in "interacting with others." (AR 2280.) In support of that finding, ALJ Fellabaum cited the following evidence: (1) Claimant's diagnoses of personality disorder, bipolar disorder, and PTSD; (2) medical records documenting that Claimant presents, at times, with a depressed, anxious, dysthymic, or irritable mood; (3) Claimant's reports of having constant nightmares,

extreme anxiety, and panic attacks; (4) Claimant's reports that she has difficulty getting along with others, cannot be around people she does not know, cannot be around men, cannot leave her house except for doctor's appointments, and experiences paranoia; and (5) Claimant's demonstration of poor frustration tolerance, mild paranoid ideation, an impatient attitude, and irritability upon psychological examination. (AR 2280.) Consistent with her step-three finding, ALJ Fellabaum, in her discussion of Claimant's RFC, credited PMHNP Calzado's assessment of "marked limitations with social interaction[,]" finding his opinions in that area to be "support[ed]" by the record. (AR 2291.) Notably, she also afforded only "partial weight" to the opinions of State agency reviewers Drs. Phillip Massad and Maurice Prout, who opined that that Claimant has only "moderate limits maintaining social functioning[,]" noting that their opinions are "only partially consistent with the medical evidence" and specifically noting that "the record shows several complaints of anxiety around strangers, particularly men – this affects the claimant's ability to function socially." (AR 2289.) She also afforded only "limited weight" to the opinion of consultative examiner Orlando Ortiz, M.D., who found only "mild" to "moderate limits" in Claimant's ability to interact with supervisors, co-workers, and the general public. (AR 2291.) In other words, while the Commissioner is correct that the record contains conflicting opinions regarding Claimant's functional limitations—particularly, as relevant here, in the area of social interaction—ALJ Fellabaum fully resolved those conflicts, ultimately agreeing with PMHNP Calzado's opinion that Claimant has "marked limitations with social interaction." (AR 2291.)

PMHNP Calzado's specific "social interaction" opinions included that Claimant has "marked" limitations in her ability to "[a]ccept instructions and respond appropriately to criticism from supervisions" and "[g]et along with coworkers or peers without distracting them or exhibiting behavioral extremes[.]" (AR 1345.) Dr. Hughson found the same marked limitations in social

interaction and explained that Claimant's "severe PTSD based on unusual, protracted abuse" has led to "'paranoia' and lack of trust[,] especially with men." (AR 1831.) Even Dr. Ortiz—who only assessed Claimant with a "moderate" limitation in her ability to "[i]nteract appropriately with supervisors"—noted that Claimant is "moderately hostile toward males" and described her thought process upon mental status examination as "irrational at times" and "ruminative on being upset a male examiner was assigned." (AR 1206, 1208.)

ALJ Fellabaum expressly acknowledged and credited Claimant's claims that she cannot be around and interact with men and, indeed, relied on those claims to support her step-three finding that Claimant's ability to interact with others is markedly limited and to discount medical opinions assessing Claimant with less-than-marked limitations in social functioning. (*See* AR 2280, 2289.) However, for reasons that ALJ Fellabaum failed to explain, the RFC she assessed failed to reflect the specific limitations she found that Claimant has. Despite that failure, I find that remand for further proceedings on this issue is neither required nor warranted given the VE's testimony that someone with the social interaction limitations that ALJ Fellabaum assessed Claimant as having— i.e., a marked limitation in the ability to interact appropriately with others, and the inability to be around and interact with men (AR 2280)—would not be employable. (*See* AR 2357.) On this record Claimant has established that she was disabled from August 6, 2015 through January 9, 2020, and remand for additional fact-finding would serve no useful purpose. As such, I recommend that the Court remand this matter for an immediate award of SSI benefits to Claimant.

## V.    Conclusion

Claimant has *twice* met her burden of demonstrating—and the Social Security Administration has twice found—that she is disabled under Title XVI of the Social Security Act and, therefore, entitled to receive SSI benefits: first, beginning on July 6, 2009, and continuing

until her benefits were terminated when she was incarcerated from 2011-2015; and, again, beginning on January 10, 2020, and continuing through the present day. Claimant has, now, *twice* challenged the Commissioner's finding that she was not disabled from August 6, 2015, through January 9, 2020, and the Commissioner has, now, *twice* conceded that that finding is not supported by substantial evidence.

As discussed herein, I find that ALJ Fellabaum's finding that Claimant was not disabled during the relevant period is not supported by substantial evidence and that remand, is therefore, appropriate. Because ALJ Fellabaum found that Claimant has a marked limitation in social interaction, and because the VE testified that someone with Claimant's specific social interaction limitations would not be able to work, I find that Claimant has met her burden of establishing disability during the relevant time period, there is no reasonable probability that she would be denied SSI benefits, and that requiring further proceedings would merely delay the award.

Therefore, I recommend that Claimant's Motion to Award Immediate Payment of Benefits or Reverse and Remand for Rehearing with Supporting Memorandum be GRANTED with respect to her request seeking remand for an immediate award of benefits and that the Commissioner's motion (Doc. 23) be GRANTED IN PART with respect to his request to reverse and remand ALJ Fellabaum's decision. I further recommend that the Commissioner's motion be DENIED with respect to his request to remand for additional administrative proceedings because additional fact-finding would serve no useful purpose. Finally, I recommend that the Court reverse the ALJ's decision and remand this matter for an immediate award of Supplemental Security Income benefits for Claimant's period of demonstrated disability from August 6, 2015 through January 9, 2020.

**Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourte(14) days after a party is served with a copy of these proposed findings and**

recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico.  A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE